## MAKRIS v. MELIS et al.

No. 2993.   Decided August 25, 1917.   Rehearing denied October 9,
1917.   (167 Pac. 802.)

1. CONTRACTS—CONSTRUCTION—RULES. In construing a written con-
tract it is the duty of the court to consider all of its terms and the
relationship of parties at such time, and, if possible, to arrive at
their actual intent. (Page 548.)

2. CORPORATIONS—SALE OF STOCK—CONTRACTS—CONSTRUCTION. Defen-
dants organized a mercantile corporation and entered into a contract
with plaintiff for the sale of twenty-two shares of the company's
stock. The contract was written in Greek, which was the native tongue
of the parties, and recited that the defendants had sold plaintiff

twenty-two shares in the company for a named consideration, that defendants acknowledged him a copartner to the extent of his shares, and that he should be responsible for losses and entitled to profits thereafter. Comp. Laws 1907, section 330, declares that stock shall be deemed personal property, and delivery of a stock certificate of a corporation, together with a written transfer signed by the owner to a bona fide purchaser or obligee, shall be deemed a sufficient transfer as against any creditor of the transfer. *Held* that, though the contract recited that the sellers reserved the right to deliver the shares, it should be construed in connection with the statute, and casts on the sellers the duty to deliver to plaintiff the certificate for the shares. (Page 548.)

3. CORPORATIONS—SALE OF STOCK—ACTIONS—DAMAGES. Sellers of corporate stock who failed to deliver certificates as required cannot defeat an action for damages on ground that corporation subsequently became insolvent, where it was solvent for more than two years after sale, during which time shares were worth amount paid therefor. (Page 548.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Konstantinos Makris against Nicolaos Melis and others.

Judgment dismissing complaint. Plaintiff appeals.

REVERSED and remanded with directions.

*Allan T. Sanford* and *Aaron Myers* for appellant.

*H. L. Mulliner* for respondent.

GIDEON, J.

The controlling question on this appeal is the construction of the written contract between the parties. Plaintiff alleges the existence of the contract, the payment of the moneys stipulated therein by him to be paid to the defendants, and the failure and refusal on the part of the defendants to deliver to him the shares of stock mentioned in the contract, and damages by reason of such failure. The defendants Nicolaos Melis and Konstantinos Melis, the only two defendants answering, among other things alleged that plaintiff

purchased, not from the defendants but from the Italian-Greek Mercantile Company, twenty-two shares of that company's capital stock, and that the moneys paid by the plaintiff were paid to that company; that the said mercantile company at that time was not designated, conducted, or regarded by the owners thereof as strictly a corporation, but was, on the contrary, regarded and conducted as a partnership; that the answering defendants had no certificates of stock delivered to them, and had no power to execute or deliver certificates to the plaintiff, and denied that plaintiff ever demanded certificates of stock from them; that after the contract plaintiff was recognized as an owner or stockholder in the business to the amount of the interest he had purchased; that he claimed to be such owner and was entitled to all the rights and privileges of an owner and stockholder of said company; that the said company was declared insolvent and a receiver appointed on the 24th day of April, 1914; and that after the appointment the plaintiff continued to make such claim of ownership until the said company was declared a bankrupt. Defendants denied any liability to the plaintiff for damages or otherwise.

Trial was had before the district court of Salt Lake County, and at the conclusion of the plaintiff's testimony defendants moved for a nonsuit and dismissal upon the following grounds: "That the plaintiff had not made out a prima facie case, and that their own evidence shows that they are not entitled to recover in this action."

It appears from the record that in April, 1906, the defendants L. G. and E. C. Skliris, together with three others, organized a corporation for the purpose of carrying on a general mercantile business in Salt Lake City, Utah, and elsewhere in the state of Utah, to be known as the Italian-Greek Mercantile Company, and that the authorized capital stock was $10,000, represented by 100 shares of the par value of $100 each; that all of said stock was issued to the incorporator; that subsequent to the date of incorporation, to wit, about March 5, 1908, the two defendants Melis bought one-half of the original outstanding capital stock, and thereby

became half owners in the business with the two defendants Skliris. It also appears that certificates of stock were issued to the original incorporators, and at the date of the purchase by the defendants Melis those original certificates were surrendered to the company and canceled, and new certificates were issued to such defendants. It further appears from the testimony that in October, 1910, the defendants, who were then the owners of all of the stock of the company, sold 33 shares of stock to one Mantis, and that on February 9, 1911, the contract in question was entered into between the plaintiff and defendants. That contract was originally written in Greek, that being the native tongue of the parties to this action, but it is admitted by both plaintiff and defendants that the following is a correct translation of the same:

"The undersigned, Evangelos G. Skliris, Nicolaos Melis, Konstantinos Melis, and Leonidas G. Skliris, residents of Salt Lake City, Utah, sold on this day to Konstantinos Makris, resident of Salt Lake City, Utah, twenty-two (22) shares of the Italian-Greek Mercantile Co. of Salt Lake City, Utah, for the consideration of two thousand one hundred dollars ($2,100.00) of which have received from him this date in cash, one thousand five hundred ($1,500.00) dollars and the balance of six hundred ($600.00) dollars shall Konstantinos Makris pay to us within three months from date. That we acknowledge him as a copartner to the Italian Grocery Co. to the extent of his shares from the twenty-fifth of October, 1910. That he shall be responsible from that date for the losses and payments, and that he shall be entitled to the profits. That we reserve the right to deliver him the shares.

"This was accepted by Konstantinos Makris, and in accordance this was dictated in duplicate and was signed by all legally.

"[Signed]      The Contracting Parties:
"E. G. Skliris,
"N. B. Melis,
"K. D. Makris."

In attempting to determine just what the parties to the foregoing contract intended, and upon which there was a

meeting of minds, it is necessary to consider the relationship of the parties and their understanding of the ordinary terms of such a paper. None of the parties to this 1, 2, 3 contract was an adept in putting into legal phraseology the terms of the contract. The language used to express the intention is somewhat indefinite and apparently somewhat contradictory. It is the duty of a court in construing a written contract to consider all of its terms and the relationship of the parties at such time, and, if possible, arrive at the actual intent of the parties and upon what their minds met. We think it is possible in construing this contract, under the circumstances that surrounded the parties, to determine the meaning of the contract and the understanding of the parties at the time of its execution.

That the plaintiff in that contract understood he was purchasing from the defendants twenty-two shares of the capital stock of the corporation mentioned does not seem to be in any way doubtful. That the defendants understood they were either selling or agreeing to sell a like number of shares is not open to question. The contract price was agreed upon and mentioned in the contract. The amount paid at the execution of the contract, and the balance to be paid, and the time when it was to be paid, are definitely stated. That the payment of the balance of the purchase price was subsequently made by the plaintiff is not disputed. But it is contended by defendants that corporate stock is personal property and, as such, is subject to sale and transfer by any writing or bill of sale purporting to sell stock, and that a certificate of stock is not the right or thing sold, but is merely evidence of such right or thing, or, as expressed by defendants' counsel, is simply the muniment of title and not the right itself; that, when the defendants executed the contract in question, thereupon the plaintiff became a stockholder and lost no rights by failure of the defendants to deliver the certificates of stock representing his purchase in the corporation.

But do the facts warrant such a conclusion? We have a statute in this state (Comp. Laws 1907, section 330) ; regulating or directing the method of transfer of stocks as follows:

''Stock shall be deemed personal property, and the delivery of a stock certificate of a corporation, together with a written transfer of the same, signed by the owner, to a bona fide purchaser or pledgee for value, shall be deemed a sufficient transfer of the title as against any creditor of the transferor and all other persons whomsoever; provided, that for the purpose of voting, and of receiving dividends, and of levying and collecting assessments, and wherein the corporation is otherwise interested, the holder of record, as shown by its books, shall be treated and considered as the holder in fact, and the transferee shall have no rights or claims as against the corporation until transfer thereof be made upon the books of the corporation or a new certificate be issued to him.''

Under that section the plaintiff had no right or claim against the corporation to compel it to recognize his interest until the stock representing such interest was transferred to him upon the books of the corporation or a new certificate issued. Was it not then the duty of the defendants to give, as well as the reciprocal right of the plaintiff to receive, under the contract and under the foregoing statute (which is incorporated into and becomes a part of every contract for the sale of corporate stock), the right in the corporation, and also the evidence or muniment of such right, so that he could assert and enforce it against the corporation itself, and sell and transfer such right if he desired? The evidence discloses, and that is not disputed, that the defendants held certificates of stock representing the number of shares sold to the plaintiff. Plaintiff, having paid the agreed price, was entitled, as above indicated, to have defendants give him the evidence of the right that he had purchased, and doubly so where, as in this case, that evidence is held by the parties receiving the consideration for such stock. Transfers must be made as provided by the laws of the state under whose laws the corporation was organized and exists. 10 Cyc. 593.

There is no evidence, or intimation of evidence, to support the allegations of the answer that the plaintiff bought, or agreed to buy, the stock from the corporation itself, or negotiated with the corporation for any such stock. In fact, the record discloses that the corporation had no stock; that the

full amount of the stock authorized had been issued to the defendants. It is not disputed that the plaintiff at the date the last payment was made requested that the stock be issued to him; that on various occasions thereafter he made a like demand upon the defendants, and through various excuses the defendants never delivered, or offered to deliver, him the stock; that after a year or more had passed he requested the delivery of the stock from the defendants or the repayment of the money that he had paid; that the stock was promised to him, and at other times the money was promised, as testified to by the plaintiff. The testimony also establishes that at the time this stock was purchased, and for two years thereafter, the assets of the corporation were such that the stock was worth its full face value, and that condition existed and continued long after the plaintiff had ceased to try to get the stock from defendants and had demanded repayment of the money which he had paid to them.

Some point is made that by reason of one particular clause in the contract, to wit, ''that we reserve the right to deliver him the same,'' the defendants were under no legal obligation at any time to deliver to the plaintiff the shares of stock mentioned in the contract. Such a construction would be inconsistent with the other provisions of the contract. As stated above, these parties were not experts in preparing legal documents, and it is not at all reasonable that the parties intended any such a reservation of right on the part of the defendants. When considered in connection with the remainder of the contract, that sentence was intended to mean, if it can be given any meaning whatever, that the defendants reserved the right to retain the certificates of stock until the plaintiff had fully paid for the same.

It is not necessary to determine in this case that certificates of stock cannot be sold and the title to the same transferred by a bill of sale or other written agreement; but we simply hold that in this case, whether the title passed at the date of the sale or subsequent thereto, the plaintiff, under the terms of the contract, was entitled to receive, and it was the duty of the defendants to give to him, certificates of stock in the corporation representing his interest therein. In fact, the

certificates of stock held by the defendants themselves provide that the same shall be "transferable only on the books of the corporation by the holder hereof in person or by attorney upon surrender of this certificate properly indorsed." In other words, the position of the plaintiff, by reason of the acts of defendants in not transferring and delivering to him certificates of stock held by them, was that he had no means or way of compelling the corporation to recognize his interest or rights therein, and the stock for which he had paid was subject to claims of the creditors of the defendants, and might be treated and considered as the property of the defendants, and he, the plaintiff, have no rights or claims as against the corporation until the transfer of the same be made upon the books of the corporation or a new certificate issued to him.

It may be contended that the plaintiff had a right to compel the defendants to deliver to him the stock, the same being the evidence of his interest in the corporation. But be that as it may, there was, on the other hand, the duty of the defendants, under their contract, to furnish such evidence or certificates of stock to the plaintiff, and in not doing that they broke the contract with the plaintiff.

In view of the conclusions at which we have arrived, the question of the sufficiency of the motion for a nonsuit becomes immaterial and no opinion is expressed thereon.

It follows from the foregoing that the lower court erred in sustaining the motion for nonsuit. The judgment is therefore reversed, and the cause is remanded, with directions to set aside the order of dismissal, and to reinstate the case upon the calendar and proceed with the trial of the same. Respondents to pay costs.

McCARTY, CORFMAN, and THURMAN, JJ., concur.

FRICK, C. J.

I concur. There are four parties named in the contract of sale. Although all of the four were duly served with summons, only two of them appeared and defended the

action.  The two not appearing have, therefore, confessed the allegations of the complaint.  In my judgment the two who have answered, however, have not interposed any legal defense to the complaint, except the limited defense that is contained in the general denial after having admitted the execution and delivery of the contract sued on.

From what appears in the record, it seems the district court considered only the contract sued on, and arrived at the conclusion that under it plaintiff had no cause of action. As I view it, that conclusion is clearly erroneous.  To my mind, it is very clear that the four defendants named sold to the plaintiff twenty-two shares of the capital stock of the corporation named in the contract, which stock they owned in their individual right, for the sum of $2,100, of which the plaintiff paid $1,500 in cash, and agreed to pay the remaining $600 within three months from the date of the contract of sale.  The proof shows without dispute that the plaintiff paid the remaining $600 within the specified time, and repeatedly demanded either to have the stock delivered to him or that the defendants repay the money he had paid for the same. The defendants did neither; hence this action.

A defense is attempted to be based on certain stipulations of the contract.  While it is a cardinal rule of construction that all of the stipulations of a contract must be given their usual and ordinary meaning and intended force and effect, yet it is also a well-recognized rule of construction that, in case a stipulation in a contract merely expresses what the law implies, the stipulation will be given the force and effect only that is implied by law.  The latter rule is manifestly applicable to some of the stipulations in the contract in question.  For example: The statutes of this state provide what the rights of each stockholder are by making each share of corporate stock of the same class equivalent in power and right to every other share of stock.  When the plaintiff, therefore, purchased the twenty-two shares of stock, his rights in the corporation were determined by law.  It follows, therefore, that the provision of the contract, "that we acknowledge him as copartner to the extent of his shares from the twenty-fifth day of October, 1910," can be given no other effect than

to fix the time when his property rights in the corporation began, providing the sale was consummated by a delivery of the stock to him and was transferred on the books of the corporation.

The other stipulation, "that he shall be responsible from that date for the losses and payments and that he shall be entitled to the profits," is a matter entirely determined by law; that is, no one is actually a stockholder in a corporation, as against the corporation and as against the stockholders generally, unless he originally subscribes for stock, or unless he purchases it from some one other than the corporation, and the stock is delivered to him, and it is transferred on the books of the corporation. In this case the defendants sold to the plaintiff the twenty-two shares of stock, but they have failed and neglected to deliver the same to him. They have, therefore, breached their contract of sale, and thereby have prevented plaintiff from completing the relationship of stockholder and of enjoying the benefits, if any, of such relation. The legal rights of the plaintiff as against the defendants, therefore, are precisely the same as though the defendants had sold him any other personal property, had received the purchase price therefor, and had failed to deliver the property to him at the time stipulated, or upon demand if no time was stipulated.

Nor does the provision in the contract, "that we reserve the right to deliver him the shares," affect the foregoing conclusions. If it be contended that it means something different from the meaning given it by Mr. Justice GIDEON in his opinion, then it has no force or effect whatever, since it is clearly repugnant to every other provision of the contract, and manifestly contrary to the general intent and purpose of the parties in entering into the contract. In 2 Elliott on Contracts, after discussing the effect of repugnant stipulations and clauses in contracts, in section 1515 it is said:

"But while words or clauses in a contract apparently repugnant should be reconciled if it can be done by any reasonable construction, yet a proviso which is utterly repugnant to the body of the contract, and irreconcilable with a former clause and repugnant to the general purpose and intent of the contract, will be set aside or rejected; likewise a sub-

sequent clause, irreconcilable with a former clause and repugnant to the general purpose and intent of the contract, will be set aside or rejected.''

While courts long hesitate to enforce the rule above stated, yet where, as here, the effect of the subsequent clause would entirely nullify all that is before said in the contract, and would have the effect of giving the defendants both the contract price and the thing sold, but one conclusion is permissible, and that is that the latter clause must either be rejected or be given some subordinate effect.

In my judgment, as the record now stands, the plaintiff is clearly entitled to judgment as prayed for in the complaint.